UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SEAN ADAMS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BRAD GILLASPIE, City of Woodland Police Officer, an individual; CRAIG PRENTICE-WATTSON, City of LaCenter Police Officer, an individual; GROVER B. LAESKE, City of Woodland Chief of Police, an individual; TIM HOPKIN, LaCenter Police Department Chief of Police, an individual; CITY OF WOODLAND, a municipality, CITY OF LACENTER, a municipality, and JOHN/JANE DOES 1-20,<br><br>Defendant. | Case No. C04-5551FDB<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT OF DEFENDANT PRENTICE-WATTSON AND BRAD GILLASPIE, AND GRANTING CONTINUANCE OF MOTION FOR SUMMARY JUDGMENT ON SUPERVISOR, MUNICIPAL AND STATE LAW CLAIMS |

This matter is before the Court on the motion of Defendants Craig Prentice-Wattson, Tim Hopkin and the City of La Center and the motion of Defendants Brad Gillaspie, Grover Laseke and City of Woodland, for orders of summary judgment dismissing Plaintiff Sean Adams' claims against them. Plaintiff asserts federal claims under 42 U.S.C. Section 1983 for false arrest and imprisonment, unlawful search and excessive force, and state law claims of battery, false imprisonment, negligence and respondeat superior.

Having considered the motions, opposition, summary judgment evidence, and balance of the record, the Court finds, for the reasons set forth herein, that the motions of Defendant Prentice-Wattson and Gillaspie based on qualified immunity shall be granted in part and denied in part;

ORDER - 1

Plaintiff's motion for an extension of time to respond to Defendants' motions for summary judgment on Plaintiff's state claims (except for false imprisonment), supervisor and municipal liability claims shall be granted; and the motion of Defendants Prentice-Wattson, Hopkin and City of La Center to strike Plaintiffs' response and declarations shall be denied.

I.

Summary judgment is appropriate when the pleadings, affidavits, depositions and admissions on file demonstrate that there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 ( c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary dismissal is the appropriate and favored procedure in actions subject to an immunity defense. *See, Gutierrez v. Municipal Court*, 838 F.2d 1031, 1051-53 (9th Cir. 1988); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

II.

Plaintiff Adams' claims arise from his arrest and detention on the night of September 17, 2002, when he was mistaken for the subject of a felony arrest warrant. On that night, at approximately 8:37 p.m., City of La Center police officer Defendant Craig Prentice-Wattson was contacted by City of Woodland Police Officer Defendant Brad Gillaspie. Defendant Gillaspie asked Defendant Prentice-Wattson for assistance and backup in the execution of a felony arrest warrant for the arrest of Noah Escobar. According to his booking sheet, Noah Escobar is a six foot tall white male with blond hair, who weighed 150 pounds and was 20 years old at the time of the incident. Plaintiff Adams is a white male, who claims to be six feet four inches tall, also with blond hair, who weighed 178 pounds and was 27 years old at the time of the incident.

Prior to requesting the assistance of Defendant Prentice-Wattson, Defendant Gillaspie responded to a complaint at the Woodland Middle School. There, he learned that Escobar and another unknown person had stolen two bicycles. Although Defendant Gillaspie knew Escobar, he

ORDER - 2

had not had contact with him in over a year. During one of their previous encounters, Escobar had threatened to harm Defendant Gillaspie and his family. Defendant Gillaspie also learned from the Cowlitz County Sheriff's Office that there was a felony warrant for Escobar's arrest.

Defendant Gillaspie searched for Escobar at several locations around Woodland that he knew Escobar frequented. When he checked the Woodside Terrace apartments, he saw Escobar walking across the parking lot. When Defendant Gillaspie called for him to stop, Escobar turned and ran. Defendant Gillaspie then contacted a man sitting in a vehicle in the apartment parking lot who identified himself as Troy York. Mr. York said he had driven Escobar to the Woodside apartment complex and that he would assist Officer Gillaspie in locating Escobar. After talking to York, Defendant Gillaspie left the apartment complex and continued his search. While patrolling, he received a telephone call from York, advising that he had received a phone call from Escobar, who was at his mother's home at 512 Davidson in Woodland.

At approximately 8:30 p.m., Defendant Gillaspie drove to the Davidson street address and contacted City of La Center Police Officer Craig Prentice-Wattson to ask for his assistance. While waiting for Defendant Prentice-Wattson to arrive, Defendant Gillaspie received another phone call from York, telling him that Escobar had left the Davidson street address and moved to another location in Woodland. Defendants Gillaspie and Prentice-Wattson met at the Woodland Park and Ride and were discussing their plan when Defendant Gillaspie saw a man he thought was Escobar. The man was approximately 100 yards away from the officers, walking eastbound on Goerig toward I-5.

Defendant Gillaspie told Defendant Prentice-Wattson that he recognized the person as Escobar and headed in his police car to the subject's location. Defendant Prentice-Wattson followed in his patrol vehicle. The facts and circumstances which follow and surround Plaintiff Adams' arrest are in dispute.

Defendant Prentice-Wattson contends that when he arrived at the scene, Defendant Gillaspie

ORDER - 3

1 already had Plaintiff Adams on the ground.  Defendant Gillaspie handed him a pair of handcuffs,
2 which Defendant Prentice-Wattson placed on Plaintiff Adams' wrists, double-locking the cuffs and
3 leaving a finger-space gap between the suspect's wrist and handcuffs.  He performed a weapons pat-
4 down and Defendant Gillaspie then placed Plaintiff Adams in his patrol vehicle.  Defendant Prentice-
5 Wattson left the scene and returned to La Center.  At approximately 9:30 p.m., Defendant Gillaspie
6 telephoned him to advise that the wrong person had been taken into custody and that he had been
7 released shortly after Defendant Prentice-Wattson left the scene.

8       Defendant Gillaspie contends that he pointed his Taser at Plaintiff Adams, but did not
9 activate it.  He witnessed the handcuffing and saw that there was sufficient room in the cuffs to place
10 a finger between the cuff and wrist.  After placing Plaintiff Adams in the back of his patrol car,
11 Defendant Gillaspie again advised Plaintiff Adams that he believed him to be Noah Escobar and that
12 he had an outstanding felony warrant.  When Plaintiff Adams told Defendant Gillaspie that he was
13 mistaken about his identity, Defendant Gillaspie turned on the light in the backseat area of his patrol
14 car and saw that the man was not Noah Escobar, but was Sean Adams, whom he also knew from
15 previous contacts.  Defendant Gillaspie immediately released Plaintiff Adams, apologized to him and
16 explained why he had treated him as a high risk.  Plaintiff Adams indicated to Defendant Gillaspie
17 that he was not injured and that he understood Defendant Gillaspie's actions because his father had
18 been a police officer.

19       Plaintiff Adams contends that he has known Defendant Gillaspie for approximately 13 years
20 because his father formerly worked for the Woodland Police Department and Defendant Gillaspie
21 worked under his father's supervision for a period of time.  He claims he was on a first name basis
22 with Defendant Gillaspie and had come into contact with Defendant Gillaspie hundreds of times.
23 Plaintiff Adams was leaving a local restaurant and sports bar when he saw two patrol cars, who he
24 waved to from across the street before continuing on Goerig Street on his way home.  As he stood at
25 the intersection of the I-5 off-ramp, one of the patrol cars came to an abrupt stop three feet in front
26 ORDER - 4

of him and Defendant Gillaspie came out of his vehicle, screaming at him, with his gun drawn and pointed at Plaintiff Adams' forehead. The second vehicle also came to an abrupt stop behind him. Defendant Gillaspie ordered Plaintiff Adams to get on the ground and spread his legs. Once on the ground, one of the officers handcuffed him tightly, causing him immediate pain. He was instructed to get up, but when he could not do so on his own, one of the officers yanked him violently to his feet, causing pain through his arm and shoulder. Throughout the encounter, both officers repeatedly referred to Plaintiff Adams by the name of "Noah" and he repeatedly informed them that he was not "Noah." Once in the patrol car, Plaintiff Adams asked Defendant Gillaspie to loosen his cuffs and protested again that he was not "Noah." It was not until Defendant Gillaspie pulled the car over and turned on his dome light that he discovered that Plaintiff Adams was not the felony suspect.

The declaration of Lance Jordan, who was driving by when he observed the arrest, was also submitted by Plaintiff Adams. Mr. Jordan testified that he saw both officers exit their vehicles with pistols drawn and pointed at Plaintiff Adams. He saw red dots from the laser sights of the police officers' guns on the middle of Plaintiff Adams' back and on the back of his head. He also claims that the officers handled Plaintiff Adams in a forceful and brutal manner, although Plaintiff Adams was making no effort to resist the arrest.

III.

**A.     Federal Claims**

    1.     <u>Civil Rights Claim</u>

The elements of a 42 U.S.C. § 1983 claim are: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). The first inquiry in any Section 1983 suit is whether the plaintiff has been deprived of a right secured by the Constitution and laws. *Baker v. McCollan*, 433 U.S. 137, 140, 99

ORDER - 5

S.Ct. 2689, 61 L.Ed.2d 433 (1979). If the answer to this inquiry is no, then there is no cognizable claim under section 1983. *Id*. at 146-47.

In Section 1983 cases involving alleged violation of the Fourth Amendment, the Supreme Court has emphasized that the inquiry is whether a reasonable officer would have believed that his of her conduct was lawful, in light of the clearly established law and the information in the officer's possession. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 839 (1998); *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Law enforcement officials who "reasonably but mistakenly" conclude their conduct comports with the requirements of the Fourth Amendment are entitled to immunity. *Hunter*, 502 U.S. at 227; *Anderson*, 483 U.S. at 641.

2.    <u>Mistaken Identity - False Arrest, Search and Imprisonment</u>

When an officer arrests a subject based upon information provided by other officers and the arresting officer has no reason to question the information provided, the arresting officer is entitled to qualified immunity. *Whitely v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d. 306 (1971); *Choi v. Gaston*, 220 F.3d 1010, 1012 (9th Cir. 2000); *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1292 (9th Cir. 1999) ("a police officer may reasonably rely on a representation by other officers as to the existence of probable cause").

Plaintiff asserts that Defendant Prentice-Wattson must be held jointly responsible for Officer Gillaspie's mistake in identifying Plaintiff Adams because Defendant Gillaspie had known him for at least ten years and they were on a first name basis. However, there is no evidence to suggest that Defendant Prentice-Wattson was aware of any of these facts. There is no evidence that Defendant Prentice-Wattson observed or knew anything that would suggest that Defendant Gillaspie was mistaken in identifying Plaintiff Adams as the felony warrant suspect. The facts are undisputed that Officer Prentice-Wattson was asked to provide assistance and backup in the execution of a felony arrest warrant, that Defendant Gillaspie had not completed briefing Defendant Prentice-Wattson

ORDER - 6

when he observed Plaintiff Adams and told Defendant Prentice-Wattson that he believed Plaintiff Adams was the subject, and Defendant Gillaspie began pursuit. Both Defendant Prentice-Wattson and Defendant Gillaspie apparently believed Plaintiff Adams to be the felony suspect as they both called him by the name of that suspect.

Plaintiff Adams argues that it was unreasonable for Defendant Gillaspie to mistake him for Noah Escobar because their physical similarities alone are not enough to establish probable cause. However, physical similarities are a relevant factor in the probable cause determination. *U.S. v. Pinion*, 800 F.2d 9876 (9th Cir. 1986). Both men are white, above average in height, of slender build, and have blond hair. In addition, Defendant Gillaspie had seen Escobar at the Woodside Terrace Apartments from afar and had ordered him to stop, but Escobar fled on foot. Troy York, who had driven Escobar to the apartments called Defendant Gillaspie twice to alert him that Escobar was moving from one location to another. Therefore, it was reasonable for Defendant Gillaspie to assume that Plaintiff Adams, who physically resembles Escobar, and who was on foot, was the suspect he had been pursuing for two hours.

Plaintiff Adams' claim that he repeatedly told both officers that he was not Noah does not render the arrest invalid. *See, e.g.*, *Baker*, 443 U.S. 137 at 146 (no constitutional violation when plaintiff validly arrested pursuant to warrant and jailed for three days amidst continuing protests that there was a misidentification). Although Plaintiff Adams claims that Defendant Gillaspie and he were on a first name basis, there is no evidence that Plaintiff Adams ever identified himself to Defendant Gillaspie or acknowledged that he knew Defendant Gillaspie. His evidence is merely that he repeatedly denied he was Noah. Defendant Gillaspie detained Plaintiff Adams for approximately thirty minutes and released him immediately upon realizing that he had the wrong man in custody. The Court finds that Defendant Gillaspie's mistake was reasonable under the circumstances.

The mistake in identifying Plaintiff Adams was not a violation of Plaintiff's rights, *see, Hill v. California*, 401 U.S. 797, 802, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), nor was the Defendant

ORDER - 7

required to investigate the accuracy of Plaintiff Adams' claim of innocence. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Accordingly, summary judgment as to Plaintiff's section 1983 claims against Defendant Prentice-Wattson and Defendant Gillaspie for unlawful arrest, search and imprisonment are granted. For these same reasons, the Court finds that the mistake of identity does not constitute a cause of action for false imprisonment against these Defendants under state law. *See, Bender v. Seattle*, 99 Wn.2d 582, 591, 664 P.2d 492 (1983).

       3.     <u>Excessive Force</u>

The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396. When determining whether the amount of force used was reasonable, courts must balance "[1] the nature and quality of the intrusion on the individual's Fourth Amendment interests against [2] the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). In evaluating the government's interests, the courts consider such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Defendants Prentice-Wattson and Gillaspie contend that they reasonably believed that they were dealing with a dangerous felon and that they followed procedures for a high risk stop. The suspect was the subject of a felony arrest warrant, had threatened harm to Defendant Gillaspie and his family in a previous encounter, and at the time of Plaintiff Adams' detention, the felony suspect was in flight from attempted arrest. When Defendant Prentice-Wattson placed a pair of handcuffs on Plaintiff Adams, he states that he double-locked them, leaving a finger-space gap between Plaintiff Adams' wrist and the handcuff. Defendant Gillaspie confirms that the handcuffs were placed

ORDER - 8

1 correctly on Plaintiff Adams' wrist, leaving room between his wrist and the handcuff.

2 On the other hand, the subject of the felony arrest warrant was being apprehended for the theft of bicycles and was known to be on foot. Plaintiff Adams states that the handcuffs were placed on his wrists so tight that it caused him immediate pain and lasting injury. He also claims that one of the officers caused severe pain to his hand, arm and shoulder when he yanked him to his feet, and that he was slammed with such force onto the hood of the vehicle that his feet were lifted off the ground. As a result of the tight handcuffing, Plaintiff Adams claims he has injured tendons in his forearm and has had to learn to write and work with his left hand.

In addition, a bystander, Lance Jordan, claims that Plaintiff Adams was "yank[ed] and/or jerk[ed] up of [sic] the ground by one arm in a very forceful brutal manner," and that the police "pushed him into the back of the Woodland patrol car face-first in a forceful manner," although Plaintiff Adams was making no effort to resist. Mr. Jordan also testified that he observed both officers pointing their firearms at Mr. Adams, which is contrary to Defendants' evidence.

The facts involving what Defendant Prentice-Wattson did while securing the arrest and whether the force used was reasonable are in dispute. Accordingly, summary judgment on Plaintiff Adams' section 1983 claim of excessive force is denied. *See e.g., Act Up! Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993) (factual questions precluding determination of qualified immunity on summary judgment include dispute over what the officer and claimant did or failed to do).

**B.    Defendants Hopkin, City of La Center, Laseke, City of Woodland, and State Law Claims (Except False Imprisonment)**

Plaintiff requests that the Court stay its ruling with respect to these claims and parties until the discovery process is complete. As Defendants point out, Plaintiff has not provided the Court with proper Rule 56(f) affidavits demonstrating the likelihood that controverting evidence exists and steps it intends to obtain such evidence. However, Plaintiff has provided a declaration of counsel that, during the Rule 26(f) conference, an agreement of counsel was entered that all depositions

ORDER - 9

would be cancelled and the discovery process would be stayed until defense counsel had an opportunity to file a motion based on qualified immunity. Defendants provide no response to this declaration except to state that its motions are properly brought.

Certainly, as correctly noted by Defendants, Plaintiff cannot prevail on his claims of supervisor liability against Defendants Hopkin and Laseke[1] and municipal liability against Defendants City of La Center and City of Woodland[2] absent a constitutional violation. However, as questions of fact exist as to Plaintiff's claim of excessive force and elements of these claims go beyond the scope of qualified immunity, the Court agrees that Plaintiff should be allowed an adequate opportunity to develop these and his remaining state law claims through discovery before responding to Defendants' summary judgment motion. *See, e.g.*, *Redmond v. Burlington Northern Railroad Co. Pension Plan*, 821 F.2d 461, 469 (8th Cir. 1987); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

If there are facts to establish a likelihood that controverting evidence may exist as to material facts relating to these claims, Plaintiff should be able to make this determination in a timely manner. Therefore, Defendants' summary judgment motions on these remaining claims shall be renoted for July 1, 2005. Plaintiff's response and Defendants' replies shall be filed in accordance with the local rules governing dispositive motions.

**C.     Motions for Additional Time and To Strike**

Defendants Prentice-Wattson, Hopkin and City of La Center move to strike Plaintiff's

---

[1] Supervisors can be held liable under Section 1983 only if they play an affirmative part in the alleged deprivation of constitutional rights, *Rise v. Oregon*, 59 F.3d 1556, 1563 (9th Cir. 1995), and must set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict injury. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

[2] A plaintiff alleging liability of a municipality for civil rights violations must prove three elements: (1) a violation of his constitutional rights, (2) the existence of a municipal policy or custom of the municipality, and (3) a causal nexus between the policy of custom and the constitutional violation. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

ORDER - 10

response and declarations in opposition to the summary judgment motion on the grounds that they were filed three days after the noting date.[3] Following the deadline, Plaintiff filed a motion to extend his deadline for filing a response. Defendants have since filed a reply to Plaintiff's opposition. The Court has considered all of the papers and evidence submitted by the parties, finding that to do otherwise would be inconsistent with the intent of Rule 56. *See, e.g.*, *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.3d 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule.")

ACCORDINGLY,

IT IS ORDERED:

(1) Defendant Prentice-Wattson's and Defendant Gillaspie's motions for summary judgment (Dkt.# 17 and #22) on Plaintiff's 42 U.S.C. § 1983 and state law claims of unlawful arrest, false imprisonment and unlawful search are **GRANTED**;

(2) Defendant Prentice-Wattson's and Defendant Gillaspie's motions for summary judgment (Dkt.#17 and #22) on Plaintiff's 42 U.S.C. § 1983 claim of excessive force are **DENIED**;

(3) Plaintiff's motion for continuance to respond to Defendants' motions for summary judgment on supervisor liability, municipal liability and state law claims shall be **GRANTED** and the Clerk shall renote Defendants' motion for summary judgment (Dkt.#17 and #22) on the remaining claims as set forth herein for **July 1, 2005**;

(4) Defendant's motion to strike Plaintiff's response and declaration in opposition (Dkt.#24) is **DENIED**; and

(5) Plaintiff's motion to extend time to file his response to motion for summary judgment

---

[3] Motions to strike have been abolished in this district.

ORDER - 11

1    (Dkt.#25) is **GRANTED**.

3    DATED this 26th day of April, 2005.

_____
FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

26   ORDER - 12